## Ritter's Estate. Ritter's Appeal.

*Statute of limitations—Tolling statute—Advancement—Evidence.*

A mother gave to her son a sum of money, taking his note at the time. There was an understanding that no interest should be paid, and that the principal should be repaid only in the event of the mother needing and demanding it. No interest was paid, and the son died without the mother having demanded the principal. After the son's death the mother claimed the amount of the note from his estate. The statute of limitations was pleaded, and the claimant then offered a declaration made by her son to her agent, as follows: "This interest should be paid or wrote on the note. If my mother should die, M. might make a bad case of it. . . . There should be a new note made, or the interest marked on the old one. If mother should die and M. get hold of it, we would have to pay the interest to date." *Held*, that the declaration was not sufficient to show an express or implied promise to pay or an admission consistent with a promise to pay.

Argued Jan. 29, 1894. Appeal, No. 424, Jan. T., 1894, by Anna M. Ritter from decree of O. C. Montgomery Co., distributing estate of William J. Ritter, deceased. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

From the report of the auditor, Edward F. Kane, Esq., it appeared that William J. Ritter died intestate on April 9, 1891, leaving to survive him a widow and three minor children. Before the auditor Anna M. Ritter, decedent's mother, presented a note of decedent dated April 1, 1883, for $1,750 payable one year after date "with interest till paid." The statute of limitations was pleaded as a bar. It appeared that Mrs. Ritter had loaned each of her children a like sum of money with the understanding that no interest was to be paid, and the principal was only to be paid if she needed and demanded it.

The auditor reported in part as follows:

"When this note was first presented to your auditor, Jacob H. Brendlinger, one of the administrators, who also appeared as the agent of Anna M. Ritter, stated that the indorsement of interest payments on the back of the note were made by the decedent at the times specified in the receipts, in his presence. At a subsequent meeting of the audit he was called as a wit-

ness by the claimant's counsel, and then stated that the dece-
dent did not make the interest indorsements, but that he, the
witness, had made them after William J. Ritter's death. This
note was found among the papers of the decedent, a short time
after his death, and then passed into the hands of Anna M.
Ritter, the claimant. She alleges that its payment is not barred
by the statute of limitations, and in support of her allegation
produces two witnesses, namely, Jacob H. Brendlinger and his
wife, Elmira A. Brendlinger, who testified that the decedent
in his lifetime made an acknowledgment of the debt to Jacob
H. Brendlinger, who was then acting as the agent of the claim-
ant, which keeps the note within the statute.

" Elmira A. Brendlinger, in her examination in chief, testifies
that ' she heard a conversation in April, 1890, between her hus-
band, Jacob H. Brendlinger, and the decedent, wherein the latter
stated that, " He owes this note for $1,750 to my mother, and
that the interest wasn't wrote on that note, and in case my
mother should die Morris McCissick would get ahold of it and
make a bad case." William J. Ritter said this, and my husband
and I were present. He said this to my husband, and I was
by.' But upon cross-examination she purports to give the ex-
act words that were used in the conversation as follows: ' My
brother said, " This interest should be paid or wrote on this note.
If my mother should die, Morris McCissick might make a bad
case of it." ' This later conversation must be accepted as re-
lating to the exact words that passed between decedent and
Jacob H. Brendlinger. In her examination in chief, Elmira A.
Brendlinger gave nothing more than the substance of the con-
versation, and, in a case where so much depends upon the actual
words spoken at the time, the true intent and meaning of the
words are best gathered from the actual words spoken in the
conversation."

The auditor found that the claim was barred by the statute
of limitations, and that the statute was not tolled, citing, Keener
v. Zartman, 144 Pa. 179; Montgomery v. Cunningham, 104
Pa. 349, and Schaeffer v. Hoffman, 113 Pa. 1.

Exceptions to the auditor's report were dismissed by the
court in an opinion by WEAND, J.

*Errors assigned* were dismissal of exceptions, quoting them.

*Charles Hunsicker*, for appellant, cited: Frey v. Hoblen, 11 W. N. 349; 1 A. & E. Ency. L. 372; Moore v. Thompson, 9 Phila. 164; Bartholomew v. Leech, 7 Watts, 472; Palmer v. Gillespie, 95 Pa. 344; Yost v. Grim, 116 Pa. 527; Rush v. Barr, 1 Watts, 110; Fox v. Cash, 11 Pa. 207.

*John W. Bickel*, for appellees, cited: Keener v. Zartman, 144 Pa. 179; Martin v. Berens, 67 Pa. 459; Burr v. Burr, 26 Pa. 284; Landis v. Roth, 109 Pa. 621; Hartranft's Est., 153 Pa. 530.

OPINION BY MR. JUSTICE FELL, April 9, 1894:

The claim before the auditor was on a promissory note made by William J. Ritter to the order of the appellant, Anna M. Ritter, for $1,750, dated April 1, 1883, due one year after date with interest. Wm. J. Ritter died April 9, 1891, and the question was whether recovery was barred by the statute of limitations.

Wm. J. Ritter was one of three children of the appellant. She had given each of her children $1,750, taking their notes at the time; and there was an understanding that no interest should be paid, and that the principal should be repaid only in the event that she needed and demanded it. No interest was paid, and no demand of the principal was made of the decedent. The evidence relied on to take the case out of the operation of the statute is that the decedent said to his brother-in-law, who we may assume was at the time the agent of the appellant, although it is by no means made clear: "This interest should be paid or wrote on the note. If my mother should die, Morris McCissick might make a bad case of it. . . . There should be a new note made, or the interest marked on the old one. If mother should die and McCissick get hold of it we would have to pay the interest to date."

The auditor held that this testimony was insufficient to remove the bar of the statute, and his finding was sustained by the learned judge of the orphans' court. We think that the judgment was clearly right. There was neither a promise to pay the principal of the note, nor an acknowledgment of it as an existing indebtedness consistent with such a promise. A promise to give a new note is not of itself sufficient: Hartranft's

Estate, 153 Pa. 530.  What was said in regard to the interest was in restriction of the decedent's liability.  There was doubtless a family understanding that the money given by the appellant to her children was in the nature of advancements to them, and as these advancements were made at different times the decedent feared that in the end he would be charged with interest which it was not the intention of his mother or himself should be paid.  For this reason he expressed a desire to have the interest credited on the note or a new note made which would not carry back interest.  As was said in the opinion of the learned judge confirming the auditor's report: "While the evidence might sustain an admission that the debt still existed, it was not sufficient to show an express or implied promise to pay, or an admission consistent with a promise to pay."

The decree is affirmed at the cost of the appellant.